2024 IL App (1st) 231975-U
No. 1-23-1975
Order filed August 30, 2024

Sixth Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| GCM PARTNERS, LLC and GREENCARE PROFESSIONAL SERVICES, P.C., | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 2018 CH 1639 |
| TRIPSITTER CLINIC, LTD., | ) ) ) | The Honorable Catherine A. Schneider |
| Defendant-Appellee. | ) ) | Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court.
Presiding Justice Oden Johnson and Justice C.A. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*: Affirming trial court order granting motion to dismiss complaint for lack of personal jurisdiction.

¶ 2    TripSitter Clinic, Ltd., a Canadian company, owns and operates a website that furnishes information to the public about ketamine-assisted therapy and allows users to sign up for therapy provided by licensed physicians throughout the United States. TripSitter subsidiaries contracted with GCM Partners, LLC, an Illinois company, to manage its website and mobile

apps and Green Care Professional Services, P.C. (GCPS), an Illinois telehealth clinic, to give ketamine therapy to patients who signed up through TripSitter's platforms. After TripSitter fell behind on payments, it and GCM Partners and GPS entered into a settlement agreement, resolving TripSitter's debt and terminating the contracts. Despite the settlement, GCM Partners and GCPS continued services under the agreements for an additional two months. TripSitter ignored their invoices and GCM Partners and GCPS sued for payment.

¶ 3    TripSitter moved to dismiss, arguing the court did not have jurisdiction. The trial court granted the motion without prejudice.

¶ 4    GCM Partners and GCPS contend that the trial court erred in dismissing their complaint because TripSitter knew GCM Partners and GCPS were located in Illinois and that a GCPS doctor in Illinois provided treatment to patients who signed up for therapy on TripSitter's platforms. Alternatively, plaintiffs contend that TripSitter is subject to jurisdiction under the stream of commerce theory.

¶ 5    We affirm. The complaint did not allege facts showing TripSitter purposefully directed its activities to Illinois or that the claims seeking payment arise from or are related to those contacts. As for the stream of commerce theory, it does not apply.

¶ 6                                Background

¶ 7    According to its website, TripSitter Clinic, Ltd., based in Toronto, Canada, "connects prospective patients to a licensed physician in the United States who can evaluate for a prescribed treatment program of low-dose, oral ketamine medication. The licensed physicians within the platform consult and coordinate with the primary care physician ("PCP") of the prospective patient, if they are approved for treatment." tripsitter.clinic/news/trip-sitter-clinic-announces-services-now-available-to-almost-half-the-united-states (accessed August 15,

2024). Users can sign up on TripSitter's website and mobile applications to obtain ketamine-assisted therapy from medical clinics throughout the United States.

¶ 8     TripSitter Corporation, a TripSitter subsidiary, agreed to pay GCPS, a medical clinic, to provide ketamine therapy to patients enrolled on one of TripSitter's platforms. The complaint states that the "majority of the patients who became customers of TripSitter and who were treated by GCPS were treated (virtually via telehealth means) by Dr. Salzman from his home or office, both of which are located in Illinois." GCM Partners, GCPS's management service organization, entered into an agreement with TripSitter Clinic Corporation, another TripSitter subsidiary, to operate its website and mobile applications and manage the work of its software developer and digital advertising vendor.

¶ 9     When TripSitter fell behind on payments to GCM Partners and GCPS, the parties agreed to a written settlement on January 31, 2023, eliminating TripSitter's debt and terminating the agreements. Nonetheless, GCM Partners and GCPS continued services to TripSitter until March 4, 2023. (The parties disagree as to whether TripSitter knew plaintiffs continued to provide services.) When TripSitter refused to pay for those two months, GCM Partners and GCPS sued under theories of *quantum meruit*.

¶ 10     TripSitter moved to dismiss, arguing that plaintiffs did not plead facts establishing general or specific personal jurisdiction. The trial court granted the motion without prejudice.

¶ 11                                Analysis

¶ 12     Plaintiffs argue the trial court erred in dismissing on specific personal jurisdiction grounds. TripSitter did not file an appellate brief. The court, on its own motion, has taken the case on the record and appellants' brief only. See *First Capitol Mortgage Corp. v. Talandis*

*Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (allowing consideration of appeal on appellant's brief only where record is simple and errors can be considered without additional briefing).

¶ 13                                    Standard of Review

¶ 14      A plaintiff has the burden to establish a *prima facie* showing to exercise personal jurisdiction over a nonresident defendant. *Russell v. SNFA*, 2013 IL 113909, ¶ 28. To overcome the *prima facie* showing, a defendant must present uncontradicted evidence defeating jurisdiction. *Id.* If the plaintiff fails to meet this burden or the defendant fails to contradict that plaintiff established a *prima facie* case of a lack of jurisdiction, the inquiry ends. *TCA International, Inc. v. B&B Custom Auto, Inc.*, 299 Ill. App. 3d 522, 532 (1998). In considering personal jurisdiction, the trial court may consider the complaint, affidavits submitted by the parties, and discovery depositions. *Campbell v. Acme Insulations, Inc.*, 2018 IL App (1st) 173051, ¶ 10. When, as here, the trial court decides a jurisdictional question based solely on documentary evidence, our review is *de novo.* See *Aspen American Insurance v. Interstate Warehousing, Inc.*, 2017 IL 121281, ¶ 12. Given this court's independent review, we may affirm on any basis the record supports, regardless of the reasons expressed in the trial court's judgment. *Hess v. Flores*, 408 Ill. App. 3d 631, 636 (2011).

¶ 15                                    Long-Arm Jurisdiction

¶ 16      Section 2-209 of the Code of Civil Procedure, Illinois's long-arm statute, governs an Illinois court's exercise of personal jurisdiction over a nonresident. The long-arm statute consists of three subsections identifying multiple grounds for exercising jurisdiction. See 735 ILCS 5/2-209 (West 2022). Subsection (c) is relevant: "A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." *Id*. § 2-209(c). For purposes of subsection (c), we assess whether the

nonresident defendants' contacts with Illinois suffice to satisfy both federal and Illinois due process. See *Russell*, 2013 IL 113909, ¶ 30.

¶ 17        Consistent with due process, an Illinois court may exercise personal jurisdiction over a nonresident defendant only where that defendant has "certain minimum contacts" so that allowing the lawsuit to proceed "does not offend traditional notions of fair play and substantial justice." (Internal quotation marks omitted.) *Aspen American Insurance*, 2017 IL 121281, ¶ 14. In determining minimum contacts, our inquiry depends on whether the plaintiff seeks general or specific personal jurisdiction. *Russell*, 2013 IL 113909, ¶ 36. General jurisdiction requires a defendant to have affiliations with the forum state so continuous and systematic as to render the defendant essentially at home there. *Aspen American Insurance*, 2017 IL 121281, ¶¶ 14, 16. Plaintiffs do not argue general jurisdiction. So, we confine our analysis to specific jurisdiction.

¶ 18        Specific jurisdiction is case-specific and involves a two-part inquiry. First, the nonresident defendant must have minimum contacts with Illinois in that (i) the defendant purposefully directed its activities at Illinois and (ii) plaintiff's claims arose from or related to those contacts. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Secondly, Illinois's exercise of jurisdiction over the defendant must be reasonable. *Russell*, 2013 IL 113909, ¶ 34. A failure to satisfy either requirement dooms specific personal jurisdiction. In other words, unless the plaintiff demonstrates the defendant purposefully directed activities that gave rise to the litigation toward the forum, there is no need for the defendant to make an independent showing that exercising jurisdiction would be "unreasonable." *Celgard, LLC v. SK Innovation Co.*, 792 F. 3d 1373, 1378 (Fed. Cir. 2015).

¶ 19    GCM Partners and GCPS and contend the trial court erred because TripSitter had "continuous and systematic contacts" with Illinois, establishing a *prima facie* showing of specific jurisdiction. As noted, "continuous and systemic contacts" applies to general jurisdiction, which plaintiffs do not raise. *Aspen American Insurance*, 2017 IL 121281, ¶¶ 14, 16. Thus, we will not address that argument.

¶ 20    Turning to specific jurisdiction factors, plaintiffs contend that the trial court had jurisdiction because it purposefully directed its activities to Illinois: (i) TripSitter's website contained information to the public about ketamine-assisted therapy and allowed patients to sign up for therapy, which plaintiffs provided in Illinois, (ii) TripSitter could not have conducted business without plaintiffs' involvement, and (iii) plaintiffs are located in Illinois and provide treatment here. We disagree.

¶ 21    "A court has specific jurisdiction over a defendant if the suit arises out of or relates to the defendant's contacts with the forum state." *Bolger v. Nautica International, Inc.*, 369 Ill. App. 3d 947, 952 (2007). At a minimum, the court must find an act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Id*. "The focus is on the defendant's activities within the forum State, not on those of the plaintiff." (Internal quotation marks omitted.) *Id*. That GCM Partners and GCPS are based in Illinois and treat patients here is of no consequence. As noted, we look to the activity of the defendants.

¶ 22    TripSitter's primary activity involved maintaining a website and a mobile app providing information about ketamine therapy and allowing patients to sign up for treatment. Personal jurisdiction does not attach where the nonresident maintains a passive website that provides information about the defendant's products or services. *Innovative Garage Door Co. v. High*

*Ranking Domains, LLC*, 2012 IL App (2d) 120117 ¶21. Moreover, selling a product over the Internet to a buyer in Illinois, when the seller has no control over who purchases the item, does not subject the seller to jurisdiction in Illinois without further ties to the state. *Id.*, ¶ 22 (citing *MacNeil v. Trambert*, 401 Ill. App. 3d 1077, 1082-83 (2010)). Even if we equate TripSitter's website to selling a product, it had no control over where patients obtained treatment; that some sought telehealth treatment from a doctor located in Illinois is insufficient contact to subject TripSitter to jurisdiction in Illinois. *MacNeil,* 401 Ill. App. 3d at 1082 (where internet seller could not control the buyer's location, the sale and related communications did not confer jurisdiction).

¶ 23    The complaint does not allege that the patients were Illinois citizens, only that GCPS physicians who provided the telehealth treatment were located in the state; this information is irrelevant by reason that we do not look to the activity of the plaintiff. *Bolger v. Nautica International, Inc.*, 369 Ill. App. 3d at 952. Moreover, even if allowing users of TripSitter's platforms to enroll for therapy provided by a doctor in Illinois constituted a sufficient contact, plaintiffs' claims do not "arise out" of those contacts. Their complaint seeks payment for services provided to TripSitter after their contract ended, which has no connection to Illinois other than plaintiffs being located here.

¶ 24                                  Stream of Commerce

¶ 25    Alternatively, GCM Partners and GCPS argue the trial court had personal jurisdiction under the stream of commerce theory. That theory, first articulated in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980), permits a forum state to exercise personal jurisdiction over a nonresident defendant that "delivers its products into the stream of

commerce with the expectation that they will be purchased by consumers in the forum State." See also *Hernandez v. Oliveros*, 2021 IL App (1st) 200032.

¶ 26 GCM Partners and GCPS do not allege TripSitter itself delivered a product into the stream of commerce for purchase by consumers in Illinois. Instead, they argue that they acted as a distributor of a product or service, ketamine therapy, that originated from TripSitter's platforms and that TripSitter knew a physician in Illinois would provide it to patients. Plaintiffs cite *Russell v. SNFA*, 2013 IL 113909 and *Levy v. Gold Medal Products Co.*, 2020 IL App (1st) 192264 for support. In both cases, the non-resident defendants' product caused injuries in Illinois. In *Russell*, a defective tail rotor bearing manufactured by a French company and distributed by another company throughout the country caused the plaintiff's helicopter to crash in Illinois. In *Levy*, an Illinois resident alleged that prolonged exposure to products containing butter flavoring chemicals produced by a California company and distributed by Gold Medal Products Co. nationwide caused her lung injuries. The courts in those cases exercised long-arm jurisdiction because the non-resident defendants allowed their products to be distributed nationwide, which made it likely the products would end up in the state.

¶ 27 Those cases are easily distinguishable. Even if we agree that plaintiffs distributed a product, ketamine therapy, for TripSitter and that TripSitter knew the therapy would be provided to patients by physicians in Illinois, unlike in *Russell* and *Levy*, the plaintiffs' alleged injuries do not arise out of that product or service.

¶ 28 We affirm the dismissal of the complaint for lack of personal jurisdiction in the absence of TripSitter purposefully directing its activities to Illinois or claims that arise out of those contacts.

¶ 29 Affirmed.