# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Wiggen v. Wiggen, 2011 IL App (2d) 100982**

---

| | |
|---|---|
| Appellate Court Caption | PATRICIA A WIGGEN, Plaintiff-Appellant, v. ANNA TEWELL WIGGEN, Defendant (Brian Roughton and Kayla Roughton, Individually and d/b/a Roughton Galleries, Inc., and Roughton Galleries, Inc., a Texas Corporation, Defendants-Appellees). |
| District & No. | Second District<br>Docket No. 2-10-0982 |
| Filed | July 27, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A complaint against Texas defendants alleging conversion, fraud and replevin in connection with the sale of a painting was properly dismissed for the lack of personal jurisdiction, since defendants did not have continuous and systematic contacts with Illinois, they had no office in Illinois, there was no evidence of direct marketing to Illinois residents, they did not initiate the transaction, they never entered Illinois, and they responded to solicitations, and, therefore, defendants lacked sufficient minimum contacts with Illinois to allow Illinois courts to exercise personal jurisdiction over them. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 09-AR-2583; the Hon. Bruce R. Kelsey, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Lisa M. Giese and Christopher J. Maurer, both of Anderson & Associates, P.C., of Wheaton, for appellant. |
| | |
| | Bradley N. Pollock and Adam C. Kruse, both of Walsh, Knippen, Knight & Pollock, Chtd., of Wheaton, for appellees. |
| | |
| Panel | PRESIDING JUSTICE JORGENSEN delivered the judgment of the court, with opinion. |
| | Justices McLaren and Bowman concurred in the judgment and opinion. |

**OPINION**

¶ 1     The plaintiff, Patricia A. Wiggen, a resident of Illinois, appeals the trial court's order dismissing her complaint alleging conversion, fraud, and replevin against defendants Brian and Kayla Roughton and Roughton Galleries, Inc. (collectively, the Roughtons), residents of Texas, for lack of personal jurisdiction. Another defendant, Anna Tewell Wiggen, an Illinois resident, remains as a party to the action. We affirm.

¶ 2                                I. BACKGROUND

¶ 3     This appeal arises out of a transaction for the July 2006 sale of a painting from Anna to the Roughtons, who own an art gallery in Texas. At the time of the sale, Anna was married to Patricia's brother, but they were divorced in October 2008. In August 2009, Patricia demanded the return of the painting and filed suit, alleging that she was the actual owner of the painting and that it was sold without her consent. The Roughtons were added as parties in January 2010.

¶ 4     In April 2010, the Roughtons moved to dismiss, arguing that the court lacked personal jurisdiction over them. Affidavits attached to the motion showed that, in December 2005, Anna called the gallery and spoke to Brian. Anna told him that she was interested in selling a painting on behalf of her family and inquired whether the Roughtons would be interested in purchasing it. Over the course of the next six months, Brian spoke with Anna on the phone and exchanged e-mail correspondence with her about the painting. Kayla was not involved in the transaction and never spoke to Anna or had any other form of contact with her.

¶ 5     On July 12, 2006, Anna called Brian, offering to sell the painting to the Roughtons for $40,000, and Brian accepted. That day, he sent to Anna a check, along with a box in which to ship the painting. The box and check were shipped from Texas and sent to Illinois. On September 14, 2006, the Roughtons sold the painting.

¶ 6        Brian remained in Texas during the entire transaction. He never traveled to Illinois, and Anna never went to Texas. The Roughtons have no physical business presence in Illinois and they never directed any advertisements or solicitations to Anna. They do not advertise or otherwise solicit business in Illinois, other than by maintaining a website and advertising in several national art magazines, trade journals, and websites.

¶ 7        On May 19, 2010, a hearing was held, and Patricia asked the court to take judicial notice of e-mails to show that Brian initiated the sale. Patricia argued that, because the contract was performed in Illinois, the court had personal jurisdiction over the Roughtons. The court did not take notice of the e-mails, because they were not attached to any filed court papers and had not been properly put before the court, but the court agreed that, on the face of the materials before it, the contract was completed in Illinois. Based on that determination, the court found that, "at this point in time on the surface," there was sufficient contact with Illinois to deny the motion to dismiss. The court stated its assumption that, if other facts came out later, counsel would make an appropriate motion.

¶ 8        On June 18, 2010, the Roughtons filed a motion to reconsider, arguing that the court erred in its application of the law. The Roughtons also noted that the court had referenced the possibility of additional facts arising and that material from Anna was not considered at the hearing on the motion to dismiss.

¶ 9        The Roughtons attached to the motion an affidavit from Anna, stating that she initiated contact with the Roughtons about selling the painting. Anna averred that, over the course of six months, she communicated with Brian by e-mail and telephone and made various representations about the condition of the painting. Through these discussions, Anna understood that any purchase of the painting was contingent upon its receipt and acceptance to ensure that it did not exhibit too much "cracklier." On July 11, 2006, Anna called Brian and asked whether he agreed to purchase the painting. Brian accepted, contingent upon his inspection of the cracklier. Brian sent Anna a check for $40,000 and a box for shipping of the painting. Anna sent the painting and held the check until Brian inspected the painting and approved of its condition. Anna averred that her only contact with the Roughtons was at her initiation or request and that she did not expect that the Roughtons would have to come to the Illinois courts in regard to any dispute over the painting.

¶ 10       Also attached to the motion to reconsider were e-mails sent between Anna and Brian showing that Brian expressed concern about the cracklier and told Anna that he would send a box for shipping along with a check. Then, he would inspect the painting upon receipt and either he would ship it back the next day if it was not acceptable, or, if it was acceptable, Anna could cash the check. Anna replied that she would accept Brian's terms.

¶ 11       Patricia filed a response to the motion, arguing that the motion was improper because there was no newly discovered evidence, change in the law, or error in the court's application of the law. On July 21, 2010, the parties were allowed additional time to supplement their briefs in order to address *MacNeil v. Trambert*, 401 Ill. App. 3d 1077 (2010), a case decided on June 18, 2010.

¶ 12       A hearing on the matter was set for September 1, 2010. There is no transcript of that hearing or substitute for a transcript. That same day, the court granted the motion to

reconsider and dismissed the complaint against the Roughtons for lack of personal jurisdiction. Patricia appeals.

¶ 13                                    II. ANALYSIS

¶ 14                                   A. Anna's Affidavit

¶ 15    In her reply brief, Patricia contends for the first time that we should not consider Anna's affidavit, because there was no showing that it could not have been provided as an exhibit with the Roughtons' original motion. However, points not argued in the appellant's brief are forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008); R. 341(j) (eff. July 1, 2008) (reply brief "confined strictly" to responding to the arguments presented in the appellee's brief); *Sylvester v. Chicago Park District*, 179 Ill. 2d 500, 507 (1997) (issues raised for the first time in the reply brief are forfeited). Further, Patricia has not provided a transcript or substitute of the hearing on the motion to reconsider showing what transpired that would be grounds for error. For example, she has not shown what the parties presented or argued, that she made any sort of objection to consideration of the affidavit, or what the court determined as the basis of its judgment.

¶ 16    "[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). In the absence of a complete record, we must presume that the trial court had ample grounds supporting its determination. *Rock Island County v. Boalbey*, 242 Ill. App. 3d 461, 462 (1993).

¶ 17    Here, without a transcript of the hearing on the motion to reconsider or a substitute, we assume that Patricia did not object, that the affidavit was accepted at the hearing as newly discovered evidence, or that the trial court otherwise had ample grounds to support its determination about the affidavit. This is particularly appropriate when the motion for reconsideration was based in part on the court's indications that it would be open to learning of additional facts that arose, and when new case law arose during the pendency of the proceedings. Accordingly, we consider Anna's affidavit.

¶ 18                                B. Personal Jurisdiction

¶ 19    Patricia argues that the Illinois courts have personal jurisdiction over the Roughtons because the Roughtons negotiated the contract with an Illinois resident, they have a website and have advertised nationally, and the contract was performed in Illinois. The Roughtons contend that their contacts with Illinois are too attenuated to support personal jurisdiction over them, because they have no physical contact with Illinois and were passive purchasers who did not initiate the transaction, which was not substantially performed in Illinois.

¶ 20    "The plaintiff has the burden of proving a *prima facie* case for jurisdiction when seeking jurisdiction over a nonresident defendant." *Bolger v. Nautica International, Inc.*, 369 Ill.

App. 3d 947, 949-50 (2007) (citing *Keller v. Henderson*, 359 Ill. App. 3d 605, 610 (2005), and *Spartan Motors, Inc. v. Lube Power, Inc.*, 337 Ill. App. 3d 556, 559 (2003)). When the trial court decides the issue of personal jurisdiction based solely on documentary evidence, our review is *de novo*. *Id*. at 950. "In reviewing affidavits and pleadings, we resolve conflicts between the documents in the plaintiff's favor for purposes of determining whether a *prima facie* case for jurisdiction has been shown." *Id*. "A plaintiff's *prima facie* case for jurisdiction can be overcome by a defendant's uncontradicted evidence that defeats jurisdiction." *Id*.

¶ 21 Section 2-209(c) of the Code of Civil Procedure (the long-arm statute) allows an Illinois court to exercise personal jurisdiction on any basis permitted by the Illinois Constitution and the Constitution of the United States. 735 ILCS 5/2-209(c) (West 2008). "Thus, the long-arm statute has been held to be coextensive with the due process requirements of the Illinois and United States Constitutions." *Bolger*, 369 Ill. App. 3d at 950; see *G.M. Signs, Inc. v. Kirn Signs, Inc.*, 231 Ill. App. 3d 339, 342 (1992). Accordingly, the issue is addressed according to due process requirements.

¶ 22 Under state due process guarantees, it must be fair, just, and reasonable to require a nonresident to defend an action in Illinois, considering the quality and nature of the defendant's acts that occur in Illinois or that affect interests located in Illinois. *Rollins v. Ellwood*, 141 Ill. 2d 244, 271 (1990). " 'Federal due process analysis[1] requires a three-prong analysis consisting of whether (1) the nonresident defendant had "minimum contacts" with the forum state such that there was "fair warning" that the nonresident defendant may be haled into court there; (2) the action arose out of or related to the defendant's contacts with the forum state; and (3) it is reasonable to require the defendant to litigate in the forum state.' " *Bolger*, 369 Ill. App. 3d at 950 (quoting *Keller*, 359 Ill. App. 3d at 613); see also *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-77 (1985). At issue in this appeal is whether the Roughtons had sufficient minimum contacts with Illinois so that Illinois courts can assert personal jurisdiction over them.

¶ 23                        1. Minimum Contacts

¶ 24 "In order for personal jurisdiction to comport with federal due process requirements, the defendant must have certain minimum contacts with the forum state such that maintaining the suit there does not offend traditional notions of fair play and substantial justice." *Bolger*, 369 Ill. App. 3d at 951 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "The minimum contacts required for personal jurisdiction must be based on some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id*. (citing

---

[1]In *Keller*, we noted that "in almost all cases, when federal due process concerns regarding personal jurisdiction are satisfied, so are Illinois due process concerns." *Keller*, 359 Ill. App. 3d at 620. Thus, because there was no contention that the analysis diverged, we held that "because federal due process concerns have been satisfied in this case, so have Illinois due process concerns." *Id*. Similarly, neither party in this case asserts that the analyses diverge. Thus, we address only the federal due process standard.

*Burger King Corp.*, 471 U.S. at 475, and *Keller*, 359 Ill. App. 3d at 612-13). The purposeful-availment requirement exists so that an out-of-state defendant will not be forced to litigate in a distant or inconvenient forum solely as a result of random, fortuitous, or attenuated contacts or the unilateral act of a consumer or some other third person. *Id*. The minimum contacts required for the exercise of personal jurisdiction differ depending on whether general jurisdiction or specific jurisdiction is being sought. *Id*. Patricia argues that both general and specific jurisdiction are present.

¶ 25                                  a. General Jurisdiction

¶ 26    "General jurisdiction can be found when the defendant has continuous and systematic general business contacts with the forum." *Id*. (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984), and *Keller*, 359 Ill. App. 3d at 613). "Illinois limits general jurisdiction over nonresidents to instances in which the nonresident was present and doing business in the forum." *Id*. (citing *Roiser v. Cascade Mountain, Inc*., 367 Ill. App. 3d 559, 562 (2006)). "That standard requires a nonresident defendant to carry on business activity in Illinois, not occasionally or casually, but with a fair measure of permanence and continuity." *Id*. (citing *Roiser*, 367 Ill. App. 3d at 562). The standard is quite high and means that the foreign defendant has in effect taken up residence in Illinois and, therefore, may be sued on causes of action both related and unrelated to its activities there. *Id*. Transient contact, such as attendance at trade shows, advertising, or the mere solicitation of customers, is insufficient to establish general jurisdiction. *Id*. at 951-52.

¶ 27    Here, the Roughtons do not have continuous and systematic contacts with Illinois. They do not maintain an office in Illinois and, although they have a website and advertise in some national trade journals, there is no evidence that those materials solicit purchases from residents of Illinois or any other state, and there is no evidence of direct marketing to Illinois residents. There is no evidence of regular business activity in Illinois or travel to Illinois. Thus, the Roughtons do not carry on business activity in Illinois with any degree of permanence or continuity. Therefore, the courts of Illinois cannot exercise personal jurisdiction over them under a general jurisdiction theory.

¶ 28                                  b. Specific Jurisdiction

¶ 29    "A court has specific jurisdiction over a defendant if the suit arises out of or relates to the defendant's contacts with the forum state." *Id*. at 952 (citing *Keller*, 359 Ill. App. 3d at 613). For specific jurisdiction, the suit must arise directly out of the contacts between the defendant and the forum. *Id*. At a minimum, the court must find an act by which the defendant purposefully avails him or herself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Id*. "The focus is on the defendant's activities within the forum State, not on those of the plaintiff." (Internal quotation marks omitted.) *Id*.

¶ 30    "[T]he factors a court considers to determine whether a defendant has sufficiently transacted business in Illinois so as to have purposefully availed him or herself of the benefits of Illinois law are: (1) who initiated the transaction; (2) where the contract was formed; and

(3) where performance of the contract was to take place." *Id*. (citing *Viktron Ltd. Partnership v. Program Data, Inc.*, 326 Ill. App. 3d 111, 117 (2001), and *Campbell v. Mills*, 262 Ill. App. 3d 624, 628 (1994)).

¶ 31    "In cases involving a contract for the sale of goods, courts have found the exercise of personal jurisdiction appropriate when the nonresident defendant actively initiated the transaction, or when a portion of the contract performance was carried out in Illinois." *Id*. (citing *Keller*, 359 Ill. App. 3d at 618-19). However, an individual's contract with a nonresident defendant alone does not automatically establish the requisite minimum contacts. *Id*. (citing *G.M. Signs*, 231 Ill. App. 3d at 343). This is particularly true when the nonresident defendant is a buyer, rather than a seller. In those circumstances, we distinguish between active and passive purchasers. *Chalek v. Klein*, 193 Ill. App. 3d 767, 772 (1990).

¶ 32    "Under this approach, if the nonresident buyer is a passive party who merely places an order by mail, telephone, or to a salesperson and accepts the seller's price as stated in advertising or other forms of solicitation, the courts of the seller State will not be able to exercise *in personam* jurisdiction over the buyer." *Id*. at 772-73. "If the buyer departs from a passive role by dictating or vigorously negotiating contract terms or by inspecting production facilities, the unfairness which would be associated with the exercise of long arm jurisdiction over that buyer dissipates, and he or she will be subject to personal jurisdiction in the courts of the seller's State." *Id*. at 773.

¶ 33    "The type of conduct which would characterize an active purchaser is far more typical in dealings between major business organizations than in transactions in which a consumer or even a small shopkeeper is the purchaser." *Id*. "Distinguishing between active and passive purchasers therefore protects the ordinary mail order consumer who merely orders an item of merchandise from a company in a distant State from having to submit to the jurisdiction of the courts of that State while at the same time it protects sellers who manufacture custom-built products according to a nonresident buyer's specifications." *Id*. "Furthermore, under this approach, individuals from other States who order goods from Illinois residents will not be subject to the jurisdiction of our courts merely because they have entered into a contract with Illinois residents." *Id*. It addresses the due process concerns expressed by the United States Supreme Court in *Burger King*, and it allows potential nonresident defendants to structure their conduct with some degree of assurance as to whether it will render them liable to suit in Illinois. *Id*.

¶ 34    In *Chalek*, the defendant buyer purchased a single product from an Illinois seller. The defendant made the first contact to the seller to inquire about making the purchase, called another time in response to materials sent by the seller, and sent a check to the seller. When the product arrived, the defendant determined that it was not satisfactory and stopped payment on the check. However, the defendant never entered Illinois, never negotiated the terms of the purchase agreement, and did not otherwise depart from the role of a passive buyer. Therefore, we determined that personal jurisdiction was lacking.

¶ 35    In comparison, in *G.M. Signs*, the defendant buyer did not have any physical presence in Illinois. However, the plaintiff seller did not solicit the defendant's business. The defendant traveled to Illinois to inspect the seller's manufacturing facilities and then initiated and

negotiated an ongoing purchasing relationship with the seller for the purchase of custom-produced products that were made according to the defendant's specifications. In that instance, the defendant was an active purchaser who was subject to personal jurisdiction in Illinois. *G.M. Signs*, 231 Ill. App. 3d at 344-45.

¶ 36    Here, the facts fall between those of *Chalek* and *G.M. Signs*, but the record does not support a conclusion that the Roughtons were the type of active purchasers necessary for the exercise of personal jurisdiction over them. The Roughtons did not initiate the transaction and instead responded to solicitations from Anna. Indeed, Anna averred that all contact was at her request. The Roughtons never entered the state, and the action involved a single purchase with no further ongoing relationship between Anna and the Roughtons. We note that the Roughtons did negotiate in relation to the transaction, but unlike negotiations in cases that gave rise to personal jurisdiction, there is no evidence that the Roughtons vigorously negotiated price or arranged for an ongoing relationship involving custom product. Instead, the Roughtons responded to solicitations, accepted the price that was offered to them, and negotiated only for the ability to inspect the painting before their purchase became final.

¶ 37    Patricia argues that the contract was formed and performed in Illinois, giving the state jurisdiction over the Roughtons. She also argues that the Roughtons committed a tort in Illinois by directing the removal of the painting from Illinois to Texas, making Illinois the place of wrongdoing. But the Roughtons' performance in relation to the contract occurred in Texas. The contract required Anna to ship the painting to Texas and was contingent upon the Roughtons' inspection of the painting in Texas. The Roughtons issued the check from their offices in Texas and, after their inspection, title to the painting passed in Texas. See *Natural Gas Pipeline Co. of America v. Mobil Rocky Mountain, Inc.*, 155 Ill. App. 3d 841, 846 (1986) (course of performance that included transfer of title in another state did not constitute a transaction of business sufficient to give jurisdiction to Illinois); *Chicago Film Enterprises v. Jablanow*, 55 Ill. App. 3d 739, 743 (1977) (transaction in a suit over a film shipped to Missouri from Illinois took place in Missouri). Further, to the extent that Illinois was the location of wrongdoing, it was based on Anna's actions in initiating and carrying the deal through to completion. The actions from the Roughtons' side of the transaction took place in Texas. Although Patricia alleged in her complaint that the Roughtons purchased the painting knowing that Anna did not own it, nothing in the evidence that was provided for establishing personal jurisdiction supports that allegation. There is no evidence that the Roughtons were even aware of Patricia's existence.

¶ 38    Patricia also argues that the Roughtons' website establishes jurisdiction. The existence of a website may or may not be sufficient to assert personal jurisdiction, depending on the level of interactivity and the commercial nature of the information exchanged. *MacNeil*, 401 Ill. App. 3d at 1083. Patricia argues that the Roughtons' website is interactive because they admit that they solicit business through that site. However, nothing in the record provides any additional facts about the nature of the website and whether the Roughtons use it to solicit purchases of paintings as opposed to only sales of paintings from the gallery. If the site does not solicit purchases of artwork, which is what is pertinent to this case, its existence would be less relevant to the determination of personal jurisdiction. There also is no evidence that

the website specifically solicits customers in Illinois and no evidence about the amount of solicitation on the site as compared to noncommercial information. Without more, the record is insufficient to show that the existence of the website gives Illinois personal jurisdiction over the Roughtons.

¶ 39     The material in the record shows that the Roughtons were passive buyers who were not subject to the jurisdiction of the Illinois courts. We also observe that, because Patricia did not provide a transcript or substitute of the hearing on the motion to reconsider, it is unknown what, if any, additional facts or arguments arose at that hearing. To the extent that there were additional facts presented about the performance of the contract, the location of any wrongdoing, or the nature of the Roughtons' website, we must assume that the trial court's order was in conformity with law and had a sufficient factual basis. See *Foutch*, 99 Ill. 2d at 391-92.

¶ 40                                          III. CONCLUSION

¶ 41     The Roughtons lacked sufficient minimum contacts with Illinois for our courts to exercise personal jurisdiction over them. Accordingly, the judgment of the circuit court of Du Page County is affirmed.

¶ 42     Affirmed.