NOTICE

Decision filed 09/18/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 190231-U

NOS. 5-19-0231 & 5-19-0234 (consolidated)

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| DONNA F. BURRELSMAN, | ) | St. Clair County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| and | ) | No. 08-D-639 |
| | ) | |
| THOMAS L. BURRELSMAN, | ) | Honorable |
| | ) | Stacy L. Campbell, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

| | | |
|---|---|---|
| DONNA BURRELSMAN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 11-L-146 |
| | ) | |
| AMERICAN FAMILY INSURANCE COMPANY; | ) | |
| U.S. BANCORP, d/b/a U.S. Bank; ADAM KOCKLER; | ) | |
| EMPLOYEE DOE; JOHN ROE; THOMAS | ) | |
| BURRELSMAN; and WELLS FARGO & CO., d/b/a | ) | |
| Wells Fargo Bank, N.A., | ) | |
| | ) | |
| Defendants | ) | Honorable |
| | ) | Christopher T. Kolker, |
| (Thomas Burrelsman, Defendant-Appellant). | ) | Judge, presiding. |

_____

   JUSTICE WHARTON delivered the judgment of the court.
   Presiding Justice Welch and Justice Barberis concurred in the judgment.

**ORDER**

¶ 1     *Held*:   In the dissolution of marriage case, where Thomas Burrelsman had sufficient contacts with the state of Illinois and both the United States and Illinois constitutional due process requirements were satisfied, the trial court had personal jurisdiction and its default judgment was not void. In the fraud case, where Donna Burrelsman sought an alternate form of service of process because Thomas Burrelsman could not be located for in person service and the trial court authorized her request pursuant to section 2-203.1 of the Code of Civil Procedure (735 ILCS 5/2-203.1 (West 2010)), the service method ordered was consistent with due process, the trial court had personal jurisdiction, and the default judgment was not void.

¶ 2     This is a consolidated appeal of two cases filed by Donna Burrelsman against Thomas Burrelsman. The first is a dissolution of marriage case and the second is a fraud case. Default judgments were entered in Donna's favor against Thomas in both cases. In the dissolution of marriage case, Thomas contends that the trial court did not have personal jurisdiction and therefore the default judgment is void. In the fraud case, Thomas argues that the trial court lacked personal jurisdiction because he was not served in person and that the service of process by publication was improper. We find that the trial court had personal jurisdiction in both cases and that service of process by publication as directed by the trial court's order in the fraud case was proper. We affirm the trial court's judgments.

¶ 3                                    BACKGROUND

¶ 4     We will provide facts for both cases in separate sections to avoid confusion with the overlapping timelines. Additional relevant facts will be included within the analyses of the issues on appeal.

¶ 5                          Dissolution of Marriage Case

¶ 6     Donna and Thomas were married in Belleville in 1966. They lived in Illinois until 1980, when they moved to Colorado. In 2007, Donna moved back to Illinois, and in August 2008, she filed a petition for dissolution of marriage. Thomas remained in Colorado. In response, Thomas

2

filed a special and limited entry of appearance and a motion to determine jurisdiction. In these documents, Thomas stated that he and Donna owned property in Colorado and argued that the trial court should dismiss the case because he had no significant contacts with Illinois, and therefore the trial court did not have jurisdiction. In turn, Donna alleged that Thomas directed her to move back to Illinois and owed her a duty of support and therefore subjected himself to Illinois jurisdiction. 735 ILCS 5/2-209(a)(9) (West 2006). In December 2008, the trial court denied Thomas's motion to dismiss. The trial court found that Donna's pleadings and affidavit established personal jurisdiction and noted that Thomas filed no pleading to counter her allegations. Thomas appealed to this court, but we concluded that the order was not final and appealable and dismissed his appeal.

¶ 7       The dissolution of marriage case continued without Thomas's involvement. The trial court issued several body attachments for his arrest without success. In April 2010, while the dissolution case was pending, the Colorado marital home was destroyed by fire. The marital home was the primary marital asset. After the fire, Thomas received insurance proceeds for the losses sustained from the fire. In April 2011, Donna asked the trial court to enter a default judgment. On April 19, 2011, the trial court found that Thomas was in default and entered a judgment of dissolution of marriage. In the judgment, the court found that the fire insurance proceeds from the loss of the marital home constituted a marital asset and awarded Donna her share.

¶ 8       Thomas filed a motion pursuant to section 2-1401 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1401 (West 2016)) on February 26, 2018, asking the court to vacate the judgment as void because the trial court did not have personal jurisdiction. The trial court denied Thomas's motion on May 13, 2019. Thomas appealed this order.

3

¶ 9                                    Fraud Case

¶ 10    Donna and Thomas entered into an agreement with Wells Fargo Bank, N.A. (Wells Fargo) on January 19, 2007, for an equity line loan secured by their Colorado home. In 2008, Donna moved out of the Colorado home and returned to Illinois.

¶ 11    On August 5, 2009, a Colorado statutory power of attorney was notarized in St. Clair County, Illinois, by a man named Adam Kockler, who was then employed by U.S. Bank. This Colorado statutory power of attorney document purported to have Donna's signature and granted Thomas power to conduct real estate and banking transactions on Donna's behalf. Donna adamantly denies that she signed this document and alleges that her signature was forged. She contends that the fraudulent document was arranged for and obtained by Thomas to secure an additional loan. Thomas presented this forged power of attorney to Wells Fargo and executed a Deed of Trust pledging the Colorado home as collateral for a $141,000 loan—$50,000 of which was dispensed that same date to Thomas.

¶ 12    In 2010, a fire burned the Colorado marital home. The home and contents were insured by American Family Insurance Company (American Family). American Family paid Thomas approximately $200,000. Donna's name was on the checks. Donna alleges that Thomas forged her signature and cashed the American Family checks. American Family notified Donna about the fire loss in May 2010 but did not inform her that it had paid the claim. Later, in October and November 2010, Donna submitted her proof of loss to American Family for personal contents destroyed in the fire. American Family agreed that the value of Donna's lost property was $82,849.80; however, as of the date when the fraud complaint was filed, American Family had not paid Donna.

¶ 13    Donna submitted a fraud packet to Wells Fargo in November 2010, denying that she participated in the 2009 loan transaction between Wells Fargo and Thomas that was secured by

4

equity in the Colorado home. Thomas stopped making payments on the Wells Fargo loan in 2010. Donna asked Wells Fargo to provide her with copies of the loan documents and associated paperwork that could establish that Thomas stole her identity and used the fraudulent power of attorney to obtain the Wells Fargo loan. However, Wells Fargo refused to provide Donna with the requested documents. Furthermore, Donna claims that despite repeated attempts to speak with Wells Fargo about the matter, Wells Fargo refused to communicate with her. Wells Fargo also refused Donna's repeated requests for the pay-off amount necessary to stop the foreclosure process. Apparently disregarding Donna's claim that Thomas committed identity theft, Wells Fargo proceeded with foreclosure proceedings in Colorado against Thomas and Donna.

¶ 14    Donna filed her lawsuit in St. Clair County seeking damages from the various named defendants on March 22, 2011. Donna sued American Family for nonpayment of insurance proceeds for the fire loss of the marital home and its contents. Donna also sued U.S. Bancorp and Adam Kockler, individually and as an employee of U.S. Bancorp. She alleged that Kockler did not act pursuant to the Illinois statutory mandates as a licensed notary public to ensure that the individual who presented the document for notarization was, in fact, Donna Burrelsman. Donna made three claims against U.S. Bancorp—that U.S. Bancorp failed to provide Kockler with a safe place to keep his notary seal in order to prevent others from unlawful use; consented to the unlawful use of Kockler's seal; and/or was vicariously liable for Kockler's unlawful acts because Kockler used his notary seal within the course and scope of his employment with U.S. Bancorp. Donna sued Wells Fargo, alleging that it conspired with Thomas and "violated federal statutory requirements and its own internal banking practices by falsely and fraudulently creating and recording a loan document" based solely upon the fraudulent power of attorney. Donna claimed that, as a result, Wells Fargo was holding her to the terms of the loan document that obligated her

5

to repay Wells Fargo approximately $200,000. Finally, in Donna's suit against Thomas, she alleged that Thomas made material and knowingly false representations to Wells Fargo. She also alleged that he provided false documents to Wells Fargo resulting in the second mortgage being taken on the Colorado home that obligated Donna for the debt.

¶ 15    Donna attempted to have Thomas served with the fraud complaint in Greenwood, Arkansas, but was never successful in locating him. On October 29, 2012, Donna filed a motion asking the trial court to allow her to obtain service of process pursuant to section 2-203.1 of the Code of Civil Procedure. 735 ILCS 5/2-203.1 (West 2010). In the motion, Donna's attorney outlined the repeated unsuccessful attempts to obtain personal service on Thomas. She asked the court to order an alternate method of service of process consistent with due process. *Id.* On November 13, 2012, the trial court granted this request, stating: "Court grants Motion for Order allowing service per 735 ILCS 5/2-203.1. Plaintiff's counsel to submit affidavit and the Court will approve service by publication." We note that the record on appeal does not contain a transcript from the hearing on Donna's motion for alternate service of process. However, in its written order, the court noted that Terry Neubauer, Thomas's attorney in the dissolution of marriage case, appeared at the hearing and provided the court with a post office box address in Arkansas—the only address that attorney Neubauer had to reach Thomas.

¶ 16    Thereafter, on December 13, 2012, Donna's attorney, Rhonda D. Fiss, submitted her affidavit in accordance with the trial court's order authorizing service by publication pursuant to section 2-203.1. *Id.* Attorney Fiss stated that she had been unsuccessfully attempting to obtain personal service on Thomas since March 2011. At attorney Fiss's direction, Donna contacted family members who advised her that Thomas was living in the vicinity of Fort Smith, Arkansas. Fiss hired a process server who attempted to locate Thomas by contacting the police departments

6

for the cities of Fort Smith and Greenwood, Arkansas; the sheriff's department for Sebastian County, Arkansas; the water departments for Fort Smith and Greenville; the Greenwood property assessor's office; and the Greenwood post office. The Greenwood post office confirmed that Thomas had a post office box but did not provide any information about Thomas's physical address. Attorney Fiss stated that she hired a second process server who drove around apartment buildings in Greenwood, Arkansas, looking for Thomas's vehicle; checked with the Greenwood property assessor and the water department; went to the homes of Thomas's relatives; and returned to Greenwood a second time to check for Thomas's vehicle around all apartments. The second process server was also unsuccessful in locating Thomas.

¶ 17      On January 8, 2013, the Proof of Publication, from the Times Record daily newspaper located in Fort Smith, Sebastian County, Arkansas, was filed with the court. The newspaper employee certified that the notice to Thomas was published on December 19, 2012, December 26, 2012, and January 2, 2013.

¶ 18      Donna filed a motion asking the trial court to enter a default judgment against Thomas on March 6, 2013. She alleged that Thomas was served by court-authorized newspaper publication, and that the February 1, 2013, deadline for filing an answer to the complaint had passed. That same date, the trial court entered judgment against Thomas and set the hearing for Donna to establish damages. Ultimately, the trial on damages was held between July 31, 2017, and August 3, 2017. Based on the evidence and testimony presented at the trial, the court awarded Donna $300,000 in compensatory damages. On September 11, 2017, the trial court entered a judgment against Thomas for $300,000 plus $807.09 for costs of suit.

¶ 19      On February 28, 2018, Thomas filed a motion to vacate the default judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2016)). He argued that

7

the judgment was void on the basis that the trial court lacked personal jurisdiction because he had not been personally served.

¶ 20    In her response to Thomas's motion, Donna asserted arguments based upon events from both the dissolution of marriage and fraud cases. From the dissolution of marriage case, Donna asserted that Thomas had been represented by attorney Terry Neubauer since November 3, 2008; that she had successfully established personal jurisdiction in that case; and that Thomas did not file a contrary affidavit or pleading. From the fraud case, Donna asserted that Thomas fraudulently obtained a notarized power of attorney over real estate document that she purportedly signed in St. Clair County, Illinois. She argued that this fraudulent act provided the State with the interest to protect her from predation by citizens of other states—like Thomas. See *McNally v. Morrison*, 408 Ill. App. 3d 248, 951 N.E.2d 184 (2011). She also claimed that the fraudulent action constituted sufficient minimum contacts to establish personal jurisdiction because Thomas's actions in obtaining the forged document were calculated to cause Donna injury within Illinois where she lived. See *Calder v. Jones*, 465 U.S. 783 (1984).

¶ 21    Donna also contended that Thomas was aware of the fraud lawsuit and was actively avoiding service of process. In support of this assertion, she cited to American Family's examination of Thomas under oath during its fire investigation. American Family's representative asked Thomas about Donna's lawsuit. He admitted that he was aware of the suit and further stated:

> "When I broached the [fraud lawsuit] subject with my attorney there, he said he was aware of it, and then side-stepped the issue. And his last basic advice to me or instructions was to depart the state of Illinois and do not return to the state of Illinois until he says I can."

Donna argued that because Thomas and his dissolution of marriage attorney were aware of the pending fraud case, Thomas could have entered an appearance and challenged the court's jurisdiction, but instead he did nothing to avoid the default judgment.

8

¶ 22    Thomas responded to Donna's arguments by claiming that his attorney had never entered an appearance for him in the dissolution of marriage case. The trial court denied Thomas's motion to vacate the default judgment on March 26, 2019, without findings.

¶ 23    Thomas filed a motion to reconsider the trial court's order denying his motion to vacate. In his attached affidavit, Thomas stated that he had not been personally served in the fraud case and that that he had not received notice by mail or by the St. Clair County Clerk's office pursuant to section 2-206 of the Code of Civil Procedure (735 ILCS 5/2-206 (West 2010)). On May 13, 2019, after arguments of counsel, the trial court denied Thomas's motion without findings.

¶ 24                          Appeals in Both Cases

¶ 25    In the dissolution of marriage case, Thomas appeals from the trial court's order denying his motion to vacate the default judgment. In the fraud case, Thomas appeals from two orders: the trial court's order denying his motion to vacate the default judgment and the trial court's order denying his motion to reconsider. Thomas filed appeals in both cases, and on August 30, 2019, he asked this court to consolidate the appeals. On September 9, 2019, we granted the motion to consolidate.

¶ 26                               ANALYSIS

¶ 27    We have jurisdiction to hear this appeal pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) because the judgments Thomas appealed are final.

¶ 28    As all issues raised in this consolidated appeal involve personal jurisdiction, we begin our analysis with a brief review of the applicable law. The validity of all judgments requires that the trial court have personal jurisdiction over the parties. *State Bank of Lake Zurich v. Thill*, 113 Ill. 2d 294, 308, 497 N.E.2d 1156, 1161 (1986). Unless the defendant waives service or enters a general appearance, "personal jurisdiction can be acquired only by service of process in the manner

9

directed by statute." *Id.* The law is settled that the plaintiff bears the burden to establish a *prima facie* basis for the trial court to exercise personal jurisdiction over a nonresident defendant. *Russell v. SNFA*, 2013 IL 113909, ¶ 28, 987 N.E.2d 778, 784 (citing *Wiggen v. Wiggen*, 2011 IL App (2d) 100982, ¶ 20, 954 N.E.2d 432, 437). The defendant can overcome a plaintiff's *prima facie* case for personal jurisdiction by offering uncontroverted evidence that defeats jurisdiction. *Id.* Our review is *de novo* if the trial court's decision is based solely on documentary evidence. *Id.* We resolve any conflicts in the pleadings and affidavits in the plaintiff's favor. *Id.*

¶ 29 Previously, to obtain personal jurisdiction over a nonresident of Illinois, Illinois courts required that both a provision of the Illinois long-arm statute and the due process requirements of the United States and Illinois Constitutions be satisfied. *Id.* ¶ 29. This two-part analysis had historically been employed by Illinois courts, first by determining if a specific section of the long-arm statute had been satisfied, and second by determining if the due process requirements of both constitutions had been met. *Rollins v. Ellwood*, 141 Ill. 2d 244, 275, 565 N.E.2d 1302, 1316 (1990). In 1989, the General Assembly amended the Illinois long-arm statute by adding subsection (c), commonly referred to as the "catch-all provision," that broadly states: "A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c) (West 2010). If a moving party invokes subsection (c), it is no longer necessary to utilize the two-part approach set forth in *Rollins* "because [subsection (c)] constitutes an independent basis for exercising personal jurisdiction that effectively collapses the jurisdictional inquiry into the single issue of whether a defendant's Illinois contacts are sufficient to satisfy federal and Illinois due process." *Russell*, 2013 IL 113909, ¶ 30.

10

¶ 30    "In all cases involving a nonresident defendant, before a court may subject the defendant to a judgment *in personam*, 'due process requires that the defendant have certain minimum contacts with the forum State such that maintenance of the suit there does not offend "traditional notions of fair play and substantial justice." ' " *Id.* ¶ 34 (quoting *Wiles v. Morita Iron Works Co.*, 125 Ill. 2d 144, 150, 530 N.E.2d 1382, 1385 (1988), quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Therefore, to satisfy federal due process we must consider whether a nonresident defendant has minimum contacts with Illinois and if subjecting the defendant to litigation in this state is "reasonable under traditional notions of fair play and substantial justice." *Id.*

¶ 31    The "minimum contacts" test is considered the threshold issue in any personal jurisdictional challenge in Illinois. *Id.* ¶ 36 (citing *Wiles*, 125 Ill. 2d at 161). Sufficient minimum contacts with Illinois must be of a type to provide "fair warning" that the nonresident defendant could be called into court in this state. *Spartan Motors, Inc. v. Lube Power, Inc.*, 337 Ill. App. 3d 556, 561, 786 N.E.2d 613, 617 (2003) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

¶ 32    The determination of whether the minimum contacts test has been satisfied is dependent upon whether the plaintiff is seeking general or specific personal jurisdiction. *Russell*, 2013 IL 113909, ¶ 36 (citing *Keller v. Henderson*, 359 Ill. App. 3d 605, 613, 834 N.E.2d 930, 936 (2005)). General jurisdiction requires that the defendant have "continuous and systematic contacts" with the state. *Bolger v. Nautica International, Inc.*, 369 Ill. App. 3d 947, 951, 861 N.E.2d 666, 671 (2007) (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)). Specific jurisdiction requires a determination of whether the case "arises out of or relates to the defendant's contacts with" Illinois. *Keller*, 359 Ill. App. 3d at 618. The trial court must also

11

consider whether it is reasonable to require the nonresident defendant to litigate the case in Illinois. *Id.* Relevant considerations include the burden to defend the case in Illinois; whether Illinois has an interest in the dispute; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of the case; and the shared interests of several states in advancing fundamental social policies. *Id.*; *Burger King Corp.*, 471 U.S. at 476-77.

¶ 33 The Illinois Constitution's due process requirement mandates that the exercise of jurisdiction be "fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins*, 141 Ill. 2d at 275. While federal and Illinois due process requirements may differ, we are aware of no cases in which federal due process requirements were met, but Illinois due process requirements were not met. *Russell*, 2013 IL 113909, ¶ 32; *Kostal v. Pinkus Dermatopathology Laboratory, P.C.*, 357 Ill. App. 3d 381, 387-88, 827 N.E.2d 1031, 1037 (2005). In addition, federal courts interpreting Illinois law have not found a meaningful difference between the federal and Illinois due process analyses. *Russell*, 2013 IL 113909, ¶ 33. We turn now to the specific jurisdictional issues in this appeal.

¶ 34 Personal Jurisdiction in the Dissolution of Marriage Case

¶ 35 At issue in this case is whether there is any basis to exercise jurisdiction over Thomas permitted by the United States and Illinois Constitutions. 735 ILCS 5/2-209(c) (West 2010). In analyzing this question, we must examine the contacts Thomas had with Illinois to determine if these contacts were sufficient and if the exercise of jurisdiction did not offend "traditional notions of fair play and substantial justice." *International Shoe Co.*, 326 U.S. at 316.

¶ 36    First, we note that Thomas bases his entire argument on the long-arm statute. As we explained earlier, the requirements of that statute need not be satisfied if the requirements of due process are met. He argues that the trial court should have allowed him to rebut Donna's contention that he directed her to live in Illinois. Both Donna's argument at trial and Thomas's contention on appeal are based upon section 2-209(a)(9) of the Code of Civil Procedure. 735 ILCS 5/2-209(a)(9) (West 2010). We find that the 1966 marriage contract entered into by Donna and Thomas in Illinois coupled with the 14 years they resided in Illinois are sufficient to satisfy the requirement of Thomas's minimum contacts with Illinois. Thomas appears to acknowledge as much, stating in his brief that his marriage and the 14 years he spent living with Donna in Illinois, "could be interpreted" as sufficient contacts. We conclude that the minimum contacts test has been satisfied for specific jurisdiction as the case clearly arose from Thomas's contacts with Illinois. Furthermore, we also conclude that maintaining the case in Illinois does not offend "traditional notions of fair play and substantial justice." *International Shoe Co.*, 326 U.S. at 316.

¶ 37    We also review the reasonableness of requiring Thomas, who is no longer a resident of Illinois, to litigate his dissolution of marriage case in Illinois. When Donna filed her petition for dissolution of marriage, Thomas was living in Colorado. When Donna asked the trial court to enter a default judgment, the marital home in Colorado had been destroyed by fire and Donna believed that Thomas was living in Arkansas based on information she received from his relatives. Based upon the record on appeal, we are not certain of the precise date when Thomas relocated. We note that the appellant has the responsibility of preparing a full and complete appellate record. *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 319, 789 N.E.2d 1248, 1251 (2003). In the absence of a complete record on appeal, "the reviewing court will presume that the order entered by the trial court was in conformity with the law and had a sufficient factual basis [citations]." *Id.*

13

Neither party resides in Colorado and the Colorado real estate at issue was destroyed by fire. Thus, Colorado has no interest in the litigation, whereas Illinois has a substantial interest in adjudicating marriages that occur in the state. We also find that Arkansas is geographically closer to Illinois than Colorado is, and thus the shorter distance would result in a lesser burden to Thomas.

¶ 38    Finally, we find that the due process requirement of the Illinois Constitution was also met in this case. Looking at the quality and nature of Thomas's actions in Illinois—the contract of marriage in 1966 and maintaining his legal residence in the state of Illinois for 14 years—we conclude that Illinois due process interests were adequately met by the trial court.

¶ 39    We conclude that the trial court had personal jurisdiction over Thomas. We affirm the trial court's default and judgment orders.

¶ 40                                  Personal Jurisdiction in the Fraud Case

¶ 41    Thomas next argues that the default judgment entered in the fraud case was void because the St. Clair County circuit court did not have personal jurisdiction over him because he was never personally served. He filed his motion pursuant to section 2-1401(f) of the Code of Civil Procedure which allows an untimely motion to vacate a default judgment if the trial court's order is void. 735 ILCS 5/2-1401(f) (West 2016).

¶ 42    Thomas's service issue is divided into two arguments. The first argument is based upon the summonses that contained an incomplete address. Donna believed that Thomas was living somewhere in Greenwood, Arkansas, and that the numerical portion of the physical address was 4613. She did not know the name of the street. Thus, the initial and all alias summonses were addressed in Thomas's name to 4613 _____, Greenwood, Arkansas. Thomas was not personally served with process in the fraud lawsuit in Arkansas. The second argument is based

14

upon the method of service of process authorized by the trial court—publication in a local newspaper in Arkansas.

¶ 43    Thomas acknowledges that he was aware that there was a fraud case pending against him in the St. Clair County circuit court, but he argues that his knowledge of the lawsuit does not excuse Donna's failure to achieve personal service. He cites to *Studentowicz v. Queen's Park Oval Asset Holding Trust*, 2019 IL App (1st) 181182, 125 N.E.3d 1151, in support of his argument. In *Studentowicz*, the appellate court held that the name listed in the summons as part of "defendant's address" was insufficient to direct the summons to the correct property owner. The summons was directed to Queen's Park R/A Round Point Mortgage Servicing—and not to Queen's Park Oval Asset Holding Trust. *Id.* ¶ 2. The court was careful not to adopt a rule that would require the "utmost precision," finding that defects in the form of "minor misspellings and inclusion or exclusion of initials are correctable misnomers and [are] therefore not fatal." *Id.* ¶ 16 (citing *Thielke v. Osman Construction Corp.*, 129 Ill. App. 3d 948, 951, 473 N.E.2d 574, 576-77 (1985)). The court also reiterated that knowledge of the pendency of a suit is not relevant on the issue of whether the summons was in the proper form. *Id.* ¶ 17 (citing *State Bank of Lake Zurich*, 113 Ill. 2d at 308).

¶ 44    The *Studentowicz* case Thomas cites is inapposite to the issues involved in this case. In *Studentowicz*, the plaintiff named a nonexistent entity with a similar name as the defendant on the summons. *Id.* ¶ 2. Although an agent of Queen's Park Oval Asset Holding Trust (the trust) was served and the trust was aware of the lawsuit and had a copy of the complaint, the court found that the trust was not actually served because of the error with the summons. *Id.* ¶¶ 5, 6, 21. Here, unlike in *Studentowicz*, there is no dispute that Thomas was the person to be served. However, we do not need to decide whether the lack of a street address was a flaw sufficient to render the process

15

ineffective because it was never served on Thomas. As such, Donna had to rely on the alternative method of service approved by the court to affect personal jurisdiction.

¶ 45    We next turn to the service by publication issue. Thomas claims that service was improper in this case because Donna did not comply with section 2-206(a) of the Code of Civil Procedure (735 ILCS 5/2-206(a) (West 2010)) which provides the steps by which a plaintiff can achieve personal service over a defendant by publication. He argues that service by publication as completed in this case was ineffective. The statute requires publication in a local newspaper in the county where the suit is pending and requires the clerk of the court to provide notice to the defendant within 10 days after the notice is first published in the newspaper. *Id.*

¶ 46    Thomas contends that the trial court did not have personal jurisdiction over him because Donna failed to comply with two requirements of the publication statute. First, the publication of notice was not done in a newspaper published in St. Clair County where the case is pending. Second, he contends that he did not receive a copy of the notice from the clerk's office within 10 days of the first publication of the notice.

¶ 47    While Thomas accurately cites the service by publication statute requirements, the statute is inapplicable because Donna asked the trial court for a special order to authorize an alternate form of service pursuant to section 2-203.1 of the Code of Civil Procedure (735 ILCS 5/2-203.1 (West 2010)). Section 2-203.1 states that if personal service upon a defendant cannot be achieved by service upon the defendant himself or by leaving a copy at the defendant's place of abode, the plaintiff is allowed to ask the court to enter an order directing a "comparable method of service." *Id.* The motion should be accompanied by an affidavit explaining what methods were attempted and outlining the extent of the investigation to determine the defendant's whereabouts. *Id.* Finally,

16

section 2-203.1 states: "The court may order service to be made in any manner consistent with due process." *Id.*

¶ 48    In this case, the trial court authorized a service method that may have had the best chance to reach Thomas. It is clear from the record in this case that Thomas was trying to remain hidden. He did not use his physical address, but instead had a post office box in Arkansas. When the trial court held its hearing on Donna's request for an alternate form of service, Donna's attorney subpoenaed Terry Neubauer, the attorney who was representing Thomas on the jurisdictional issues in the dissolution of marriage case. The trial court asked attorney Neubauer to provide Thomas's physical address. He denied that he knew Thomas's address, but during the hearing he provided the court with Thomas's post office box number.

¶ 49    The record on appeal contains no transcript of the hearing authorizing Donna's request for service by publication in an Arkansas newspaper. Additionally, the trial court's order does not include its reasons for authorizing service by publication in an Arkansas newspaper. As stated earlier in this order, the burden is on the appellant to provide this court with a full and complete record on appeal, and if there are deficiencies, this court presumes that the trial court's order was entered in compliance with the law and had a sufficient factual basis. *Midstate Siding & Window Co.*, 204 Ill. 2d at 319.

¶ 50    We note that the newspaper chosen is published and distributed in the geographic area of Arkansas where Thomas maintained a post office box. Therefore, this publication would likely have had the best opportunity to reach Thomas. We also note that the attorney representing Thomas, although he had not entered his appearance in the fraud case, was present in court for the hearing and was aware of the trial court's order authorizing service by publication in an Arkansas newspaper. Additionally, Thomas testified under oath in a statement taken by American Family

17

Insurance that his attorney—attorney Neubauer—advised him to leave Illinois and not to return until Neubauer told him that it was safe to return. Finally, during the hearing on Thomas's motion to vacate the default judgment, Donna's attorney informed the court that she had mailed copies of "court documents" to the Arkansas post office box in an effort to keep Thomas apprised of this case.

¶ 51    Overall, the record on appeal suggests that Thomas took steps to avoid personal service. We find that service by publication in a newspaper located in the county of Thomas's post office box was appropriate under the circumstances and provided a better opportunity to reach Thomas than publication in a St. Clair County, Illinois, newspaper. We conclude that the trial court's order authorizing this alternate method of service was fair and reasonable and served the interests of due process as required by the statute. Thomas was effectively served by this alternate process. Thus, we find that the trial court had personal jurisdiction over Thomas and the default judgment is not void.

¶ 52                                    CONCLUSION

¶ 53    For the reasons stated in this order, we affirm the judgments of the St. Clair County circuit court.


¶ 54    Affirmed.